UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANDY PRISCO,<br>            Plaintiff,<br>   v.<br>LAURA MOSS et al.,<br>            Defendants. | CASE NO. C24-5236<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

This is a dispute between Andy Prisco, Laura Moss, Richard Pfeiffer, and their respective business entities over a business venture which provided crisis intervention trainings. Prisco argues this venture was a partnership from which he was wrongly expelled and that Defendants' recent contract with the Washington State Health Care Authority was wrongly obtained. Defendants move to dismiss for lack of personal jurisdiction and for failure to state a claim. The Court finds Defendants' narrow view of personal jurisdiction unsupported and concludes that it has personal jurisdiction over each Defendant. As to the alleged failure to state a claim, the Court agrees that the partnership claims are insufficiently pled, but disagrees as to the adequacy of the remaining claims. Accordingly, the Court grants in part and denies in part Defendants' motion to dismiss.

The Court also denies Defendants' motion to transfer venue and motion to dismiss for failure to join a necessary party.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 1

# I. BACKGROUND[1]

Prisco is a crisis intervention trainer that delivers trainings directly and through the entity JUMPSTART Mastery, LLC ("Jumpstart"). Dkt. No. 1-1 ¶ 8.

Moss is also a crisis intervention trainer and owns and controls Growth Central Training, LLC ("Growth Central Training"). Dkt. No. 1-1 ¶¶ 11, 17.

Pfeiffer is not a trainer but owns and controls Growth Central, LLC ("Growth Central") and the National Anger Management Association, LLC ("NAMA"). Dkt. No. 1-1 ¶¶ 10, 17. NAMA offers a Certified Intervention Specialist credential ("NAMA credential") to qualified individuals in the crisis intervention field. *Id.* ¶ 21. The NAMA credential comes in levels II through V, with level V being the highest. *Id.*

In 2016, Prisco, Moss, Pfeiffer, and Growth Central began working together on the Crisis Intervention Certification Project to provide crisis intervention trainings. Dkt. No. 1-1 ¶ 9. In 2018, Growth Central was replaced by Growth Central Training. *Id.* ¶ 13. Growth Central Training collected and distributed the profit from the Crisis Intervention Certification Project from 2018 through the end of 2022. *Id.* ¶ 14. During this time, the alleged partnership provided crisis intervention trainings in Washington (in person and remotely) and trainees could pay a fee to receive the NAMA credential. Dkt. No. 19 ¶ 15.

On November 9, 2022, Prisco and Moss submitted a proposal to the Washington State Health Care Authority ("HCA") to provide trainings through the HCA with funding administered by the Substance Abuse and Mental Health Services Administration. Dkt. No. 1-1 ¶¶ 18–19. The proposal was submitted in the name of Growth Central Training. *Id.* ¶ 19.

---

[1] This section assumes, for purposes of resolving the motion to dismiss, that the factual allegations in the complaint (Dkt. No. 1-1) are true.

In February 2023, after Prisco "questioned the transparency of profits" from the Crisis Intervention Certification Project, "Moss, Pfeiffer, and [Growth Central Training] wrongfully expelled" Prisco from the project. Dkt. No. 1-1 ¶ 15. NAMA also permanently suspended Prisco's NAMA credential. *Id.* ¶ 22.

On April 28, 2023, the HCA issued a Sole Source Notification regarding the contract Growth Central Training had submitted a proposal for, which allowed the HCA to "circumvent[] the otherwise mandatory competitive bidding process[.]" Dkt. No. 1-1 ¶ 28. The Sole Source Notification explained that Growth Central Training was the "sole NAMA authorized entity to provide the CCIS training." *Id.* After the HCA amended the Sole Source Notification to allow "offerors to submit capability statements detailing their ability to meet the state's qualifications[,]" Prisco submitted a capability statement on behalf of Jumpstart wherein he explained that NAMA credentials were "untethered from the state's training needs, and that other qualified vendors could provide the services and should have been given an opportunity to do so." *Id.* ¶¶ 29–30.

On June 15, 2023, the State issued preliminary disapproval of the Sole Source contract request. Dkt. No. 1-1 ¶ 31. After the HCA provided supplemental justification for the Sole Source contract request to the State, which included noting that Prisco was permanently suspended from using his NAMA certification, the State approved the Sole Source contract request. *Id.* ¶ 34. The HCA and Growth Central Training contract for "approximately $1,000,000" was executed on July 12, 2023. *Id.* ¶¶ 35–36.

On February 27, 2024, Prisco drafted this complaint against Moss, Pfeiffer, Growth Central Training, and NAMA. Dkt. No. 1-1. Prisco brings three causes of action against Moss, Pfeiffer, and Growth Central Training (breach of fiduciary duty, breach of right to have interest in partnership purchased, and unjust enrichment), one cause of action against all Defendants (tortious interference with a business expectancy), and one cause of action against NAMA (declaratory

judgment that Prisco "may use the CCIS credentials he earned"). *Id.* ¶¶ 39–58. While the complaint was never filed in Superior Court for Thurston County, Defendants removed this action to this Court on March 27, 2024. Dkt. No. 1. Defendants then filed the pending motion to dismiss. Dkt. No. 11.

## II.  ANALYSIS

The Court will first analyze whether it has subject matter and personal jurisdiction under Rule 12(b)(2) and then evaluate the substance of Defendants' motion to dismiss under Rule 12(b)(6) and Rule 12(b)(7). *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) ("A court should decide a 12(b)(2) motion to dismiss before a 12(b)(6) motion because a court without 12(b)(2) jurisdiction lacks power to dismiss a complaint for failure to state a claim." (cleaned up)). Finally, the Court will address Defendants' motion to transfer venue.

**A.     This Court Has Subject Matter Jurisdiction.**

This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the dispute is between citizens of different states and the amount in controversy exceeds $75,000. The complaint does not allege the citizenship of the parties (Dkt. No. 1-1 ¶¶ 1–5, 10–11), so the Court considers the unchallenged affidavits of Defendants submitted with their notice of removal. *See Hourigan v. Redgrave LLP*, No. 22-CV-04303-LB, 2022 WL 17082374, at *5 (N.D. Cal. Nov. 18, 2022) (collecting cases to support that "[t]he court considers summary-judgment-type evidence when evaluating diversity jurisdiction"). On one side, Prisco is a citizen of Washington state. Dkt. No. 1 ¶¶ 20–22, Dkt. No. 1-1 ¶ 1, Dkt. No. 19 ¶ 1. On the other side, none of the Defendants are citizens of Washington state. *See* Dkt. No. 2 ¶ 4 (Growth Central Training is a citizen of New York), Dkt. No. 3 ¶¶ 6–7 (Moss is a citizen of New York), Dkt. No. 4 ¶ 8 (NAMA is a citizen of South Carolina), Dkt. No. 5 ¶ 6 (Pfeiffer is a citizen of South Carolina). The Court has subject matter jurisdiction.

**B.    Defendants' Motion to Dismiss for Lack of Personal Jurisdiction Is Denied.**

   1.   <u>Legal standards</u>

Defendants move to dismiss this case under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Dkt. No. 11 at 18–23. The parties agree (Dkt. No. 11 at 19, Dkt. No. 18 at 12) that the test for whether this Court has personal jurisdiction over each Defendant is:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  If Prisco meets his burden on the first two prongs, Defendants must "present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (cleaned up).

While the personal jurisdiction test has three prongs, the first prong (purposeful direction to the forum) has three subparts, known as the *Calder* test. *See Calder v. Jones*, 465 U.S. 783 (1984).  This test "asks whether the defendant: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Herbal Brands*, 72 F.4th at 1091 (cleaned up).  An intentional act is "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012).  "To satisfy the express aiming requirement, the relationship between the defendant, the forum, and the suit 'must arise out of contacts that the defendant *himself* creates with the forum State.'" *Sussman v. Playa Grande Resort, S.A. de C.V*, 839 F. App'x 166, 167 (9th Cir. 2021) (quoting *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1143 (9th Cir. 2017)).

"Defendants' conduct must connect them to the forum—not just to Plaintiffs—in a substantial and meaningful way, and Defendants' relationship with Plaintiffs cannot alone serve as the basis for specific personal jurisdiction." *Boddy v. Pourciau*, No. C18-1046-JLR, 2018 WL 4637380, at *5 (W.D. Wash. Sept. 27, 2018) (citing *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014)). In contrast, for the third "causing harm" requirement, it is sufficient to know the harm could impact the plaintiff and the plaintiff resides in the forum. *See Washington Shoe Co.*, 704 F.3d at 679 (finding this requirement met when "A–Z knew that its intentional acts would have an impact on Washington Shoe and it knew that Washington Shoe had its headquarters in the state of Washington"); *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 827 (N.D. Cal. 2014) (defendant's knowledge that plaintiff was located in the forum state sufficient to show knowledge that injury was occurring in forum state).

For the second prong of the personal jurisdiction test (the claim's relationship to defendant's forum related activities) the Ninth Circuit considers "the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1091 (9th Cir. 2023) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (en banc) (per curiam)). While "[a] single contact with the forum state may be sufficient to support jurisdiction if the action arises out of that particular purposeful contact of the defendant with the forum state …, a stronger showing of purposeful contacts with the forum state will permit a lesser showing of relatedness to the litigation." *Id.* (cleaned up).

Finally, if the plaintiff establishes the first two prongs, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 451 (9th Cir. 2024). The courts use a seven-factor balancing test when considering reasonableness:

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 6

(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* at 458 (citing *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018)).

"Because the exact form of our analysis varies from case to case and depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue," the Court will consider each Defendant separately. *Janus v. Freeman*, 840 F. App'x 928, 930 (9th Cir. 2020) (cleaned up). The Court will assume the truth of the jurisdictional allegations in the complaint, except when contradicted by affidavit, and will resolve "factual conflicts between dueling affidavits" in the plaintiff's favor. *See Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th Cir. 2021) (cleaned up).

2. <u>The Court has personal jurisdiction over Moss and Growth Central Training.</u>

The claims brought against Moss and Growth Central Training arise from the expulsion of Prisco from the alleged partnership (count one and three[2]), and Prisco's entitlement to payment for his partnership interest (count two) and for his contributions to the HCA proposal (count five).

Prisco has met his burden to show Moss and Growth Central Training purposefully directed actions towards Washington state. Moss intentionally traveled to Washington state at least four times from 2017 to 2023 to lead trainings as part of the alleged partnership. Dkt. No. 19 ¶¶ 16, 20, 21, 26; Dkt. No. 12 ¶ 55. She also led at least two online trainings specifically for Washington entities as part of the alleged partnership. Dkt. No. 19 ¶ 21. Moss and Growth Central Training also submitted the proposal to HCA, a Washington state government agency. Dkt. No. 1-1 ¶ 19,

---

[2] The court discusses the parties' dispute over what acts give rise to the tortious interference claim below. *See infra* Section II(D)(3).

Dkt. No. 12 ¶ 20, Dkt. No. 19 ¶ 32. Each of these acts was expressly aimed at Washington state because the trainings (and proposed trainings) were intended to increase public safety in the state. *See Burri L. PA v. Skurla*, 35 F.4th 1207, 1215 (9th Cir. 2022) ("[W]here acts are performed for the very purpose of having their consequences felt in the forum state, the forum will have personal jurisdiction over the actor." (citing *Lake v. Lake*, 817 F.2d 1416, 1423 (9th Cir. 1987)). Moss and Growth Central Training knew that any intentional acts from this joint business venture would impact Prisco in Washington because he is a Washington citizen and was allegedly working in partnership with Moss and Growth Central Training to conduct business in Washington, serving Washington residents. Dkt. No. 19 ¶ 21. Because each of these actions directed towards Washington state relates to the claims arising from the alleged partnership and the proposal to HCA, Prisco has shown that Moss and Growth Central Training have the necessary minimum contacts with Washington state, and that counts one, two, three, and five arise from these contacts. *See Impossible Foods*, 80 F.4th at 1095 (requiring activities to have a "sufficient nexus" to the dispute).

Defendants do not address the seven factors courts consider to determine whether exercise of personal jurisdiction is unreasonable. And Defendants' other arguments on the reasonableness of exercising personal jurisdiction over Moss and Growth Central Training are unavailing. First, Defendants ask the Court to differentiate between the acts of Moss personally and Moss as the sole member of Growth Central Training. Dkt. No. 11 at 9. But Moss's statement that her only contacts with Washington state were done on behalf of Growth Central Training (Dkt. No. 13 ¶ 13) conflicts with other evidence in the record, including an email and document seeming to show that Moss and Growth Central Training were paid separately for a training in 2019 (Dkt. No. 19-7), and that Moss performed at least one Washington training as part of the alleged partnership before Growth Central Training existed (Dkt. Nos. 19-3, 19-6). Because factual disputes are resolved in Prisco's

favor, the Court will not differentiate between the acts of Moss and Growth Central Training at this time.[3]

Second, Defendants argue that none of Moss's trips to Washington as the sole member of Growth Central Training "are related to the allegations in Plaintiff's complaint." Dkt. No. 11 at 9. This argument proposes a narrow view of what "arising out of or relates to" means, asking the Court to consider only the allegations of expulsion from the partnership. But the Ninth Circuit rejected this narrow framing in *Impossible Foods* where prior and continuous trademark building activities in California were sufficiently connected to the trademark dispute to warrant personal jurisdiction. 80 F.4th at 1095. There, the Ninth Circuit explicitly rejected a stricter test that would only consider trademark enforcement activities related to the dispute. *Id.; see also Ozone Int'l, LLC v. Wheatsheaf Grp. US, Inc.*, No. C19-6155-RBL, 2020 WL 2745716, at *5 (W.D. Wash. May 27, 2020) (rejecting a narrow view of what conduct "aimed" at a jurisdiction is relevant for a personal jurisdiction analysis). Applying that reasoning here, the Court will not limit its determination of personal jurisdiction to the expulsion from the alleged partnership, rather, the activities taken in furtherance of the partnership are also relevant to the personal jurisdiction analysis.

Finally, Defendants argue that there cannot be personal jurisdiction over Moss (or Growth Central Training) for these claims because any partnership created by the parties would be a New York partnership. Dkt. No. 11 at 21. Defendants provide no analysis or authority for how the State of the alleged partnership impacts the personal jurisdiction analysis for each individual partner and, based on Defendants' own authority, the Court does not find the citizenship of a

---

[3] Defendants' authority, which holds that that associating with a corporation that causes injury in a forum is insufficient for personal jurisdiction, is unhelpful to the analysis here where the question is about an LLC, its sole member, and what actions were taken by each. Dkt. No. 20 at 11 (citing *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989)).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 9

partnership establishes, or undermines, jurisdiction over the individual partners. *See Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) (rejecting argument that "jurisdiction over the partnership establishes jurisdiction over the partners").

The Court has personal jurisdiction over Moss and Growth Central Training.

3. <u>The Court has personal jurisdiction over Pfeiffer.</u>

The analysis of Pfeiffer's contacts with Washington mirrors the analysis of Moss and Growth Central Training. The claims brought against Pfeiffer arise from the expulsion of Prisco from the alleged partnership (count one and three), and Prisco's alleged entitlement to payment for his partnership interest (count two) and for his contributions to the HCA proposal (count five). Even though Pfeiffer did not travel to Washington to attend or lead the trainings, Prisco alleges Pfeiffer was part of the partnership that organized and benefitted from these trainings. Dkt. No. 19 ¶¶ 16–20. Like Moss and Growth Central Training, Pfeiffer's intentional acts as part of the partnership were expressly aimed at Washington and he knew any wrongful acts towards Prisco related to the partnership and its intended work in this state would be felt in Washington. Thus, the Court has personal jurisdiction over Pfeiffer for claims arising from such acts, including each claim alleged against him here.

Like Moss and Growth Central Training, Defendants argue that any Washington-related acts were accomplished by NAMA, not Pfeiffer. Dkt. No. 11 at 10–11, 22–23. Again, Prisco has provided evidence that Pfeiffer received payment from these trainings separate from the payment to NAMA, which supports the Court's exercise of personal jurisdiction over Pfeiffer individually. Dkt. Nos. 19-6, 19-7; *see also* Dkt. No. 1-1 ¶ 16 (alleging profit division of partnership included fees to NAMA and Pfeiffer).

The Court has personal jurisdiction over Pfeiffer.

4. <u>The Court has personal jurisdiction over NAMA.</u>

There are two claims brought against NAMA. For Prisco's tortious interference claim against NAMA, Prisco alleges that NAMA worked with the other Defendants to revoke Prisco's NAMA credentials in order to obtain the contract with the HCA. Dkt. No. 1-1 ¶¶ 22–24. This is an intentional act aimed at Washington state and NAMA knew the harm to Prisco would be felt in Washington. Defendants' argument that the only relevant conduct by NAMA is the revocation of Prisco's credentials, again, conflicts with Ninth Circuit precedent (*Impossible Foods*, 80 F.4th at 1095) and fails to acknowledge Prisco's allegations that NAMA worked with Defendants to revoke his credentials in order to make him ineligible to compete for the HCA contract, a uniquely Washington-focused contract.

For the declaratory judgment claim against NAMA, Prisco seeks an order "that Plaintiff may use the [NAMA] credentials he earned" and also, if "NAMA asserts any trademark rights to the [NAMA] credentials as certification marks, the marks should be declared invalid as a matter of law." Dkt. No. 1-1 ¶¶ 53–54. In addition to the allegations that NAMA revoked Prisco's credentials specifically to impact a Washington contract, the allegation that most of NAMA's credentials were issued to Washington residents (Dkt. No. 19 ¶ 24, Dkt. No. 19-9) supports exercising personal jurisdiction. NAMA's history of certification in Washington state broadly gives rise to Prisco's claim.

The Court has personal jurisdiction over NAMA.

Defendants' 12(b)(2) motion to dismiss for lack of personal jurisdiction is denied.

**C.    Defendants' Motion to Dismiss Under Rule 12(b)(7) for Failure to Join a Party Is Denied.**

Under Rule 19, a party "must be joined as a party if…that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence

may…leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). "The party making a Rule 12(b)(7) motion to dismiss bears the burden of demonstrating that dismissal or joinder is appropriate." *Coppola v. Smith*, 935 F. Supp. 2d 993, 1036 (E.D. Cal. 2013) (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)).

Defendants briefly argue that Jumpstart (Prisco's LLC) is a necessary party under Federal Rule of Civil Procedure 19(a)(1)(B), and that Prisco's failure to add Jumpstart as a plaintiff requires dismissal of the action under Federal Rule of Civil Procedure 12(b)(7) because without Jumpstart as a plaintiff "Defendants are theoretically at risk of multiple obligations because Jumpstart has the claim, not Plaintiff." Dkt. No. 11 at 23.[4]

Defendants' allegation of a "theoretical risk" fails to meet their burden to show a substantial risk of inconsistent obligations without joining Jumpstart. Defendants' motion to dismiss under Rule 12(b)(7) is denied.

### D. Defendants' Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6) Is Granted in Part and Denied in Part.

1. Legal Standard

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court examines the complaint[5] to determine whether, if the facts alleged are true, plaintiff has stated "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court "consider[s] the allegations collectively and examine[s] the complaint as a whole." *Wilson v. Craver*, 994 F.3d 1085, 1093 n. 5 (9th Cir. 2021) (cleaned up). A claim is plausible if

---

[4] Defendants also state "[t]his case should be dismissed because Plaintiff lacks standing[.]" Dkt. No. 11 at 23. Defendants do not expand on this argument or otherwise provide any authority to support such a finding.

[5] The Court does not find either of the two exceptions (incorporation-by-reference or judicial notice) that allow the Court to consider material outside the pleadings applicable here and will not consider any of the affidavits or exhibits submitted by either party when deciding the Rule 12(b)(6) motion.

plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

"If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts." *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014) (citing *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990)).

The Court considers each cause of action in turn.

2. <u>The partnership claims against Moss, Growth Central Training, and Pfeiffer are dismissed with leave to amend.</u>

Count one of Prisco's complaint alleges that Defendants Moss, Pfeiffer, and Growth Central Training had a fiduciary duty to Plaintiff as partners in the Crisis Intervention Certification Project, and that such duty was breached when "they failed to act consistently with the obligation of good faith and fair dealing, e.g., their wrongful expulsion of Plaintiff from the Partnership." Dkt. 1-1 ¶ 41.  Count two alleges that Defendants Moss, Pfeiffer, and Growth Central Training violated RCW 25.05.250(1) when they "expelled Plaintiff from the Partnership without buying out" his interest.  *Id.* ¶ 44.

In their motion, Defendants argue that Prisco's first two claims fail because Prisco fails to allege facts sufficient to establish a partnership between Prisco, Moss, Pfeiffer, and Growth Central Training. Dkt. No. 11 at 14–16.  The Court agrees.  In Washington, "[t]he burden of proving a partnership is on the party asserting its existence." *DeFelice v. State, Emp't Sec. Dep't*, 351 P.3d 197, 201 (Wash. Ct. App. 2015).  A partnership requires "joint ownership of the business and joint right of control over the business' affairs." *Id.* (citing *Bengston v. Shain*, 255 P.2d 892, 895 (Wash.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 13

1953)). "The mere sharing of the net proceeds of a business venture with an employee, without more, does not of itself convert the relationship between the parties concerned into a partnership." *Bengston*, 255 P.2d 895. The complaint only alleges Prisco, Moss, Pfeiffer, and Growth Central Training shared profits. Dkt. No. 1-1 ¶¶ 9, 12–14, 16; *see also* Dkt. No. 18 at 7. These allegations are insufficient to support the two partnership claims. Accordingly, the Court dismisses counts one and two with leave to amend.[6]

    3. <u>The claim for tortious interference with a business expectancy against Moss, Growth Central Training, Pfeiffer, and NAMA is sufficiently pleaded.</u>

In Washington, "a claim for tortious interference with a contractual relationship or business expectancy requires five elements": (1) a valid contractual relationship or business expectancy; (2) that defendants knew of that relationship or expectancy; (3) "intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997). Defendants argue that they are immune from Prisco's tortious interference claim because the alleged intentional interference was that Defendants "influenced HCA to impose a contract requirement (NAMA CCIS credentials) that Plaintiff lacked," which cannot be wrongful under Washington's anti-SLAPP law (WASH. REV. CODE § 4.24.510). Dkt. No. 11 at 16–17. Prisco does not challenge Defendants' anti-SLAPP defense. Rather, in his opposition, Prisco explains that this claim does not arise from Defendants' communications with HCA, but is instead based on Defendants' coordination to expel Prisco from the alleged partnership and to revoke his NAMA credentials so that he could not compete for the HCA contract. Dkt. No. 18 at 8. Taking the complaint as a whole, Prisco has alleged facts to

---

[6] Defendants also argue that any partnership would be governed by New York law (Dkt. No. 11 at 15–16), but Defendants never explain or provide authority for why Prisco's claims fail under New York law.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 14

support this theory. *See* Dkt. No. 1-1 ¶¶ 22–25 (alleging Defendants suspended Prisco's NAMA credentials "to prevent Plaintiff from competing with the Partnership" and to "interfere with Plaintiff's business expectancy with the HCA"). Prisco does not rely on Defendants' communications with the HCA and sufficiently alleges a claim for tortious interference with a business expectancy.

    4.  <u>Prisco sufficiently alleges a declaratory judgment act claim against NAMA.</u>

Under the Uniform Declaratory Judgments Act ("UDJA"), "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed." WASH. REV. CODE § 7.24.010. The purpose of the UDJA "is to 'settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations,' and courts should liberally construe and administer it." *Bloome v. Haverly*, 225 P.3d 330, 335 (Wash. Ct. App. 2010) (quoting WASH. REV. CODE § 7.24.120). Claims for declaratory judgment must raise justiciable controversies, which require four elements: (1) "an actual, present, and existing dispute," (2) "between parties having genuine and opposing interests," (3) which involves "direct and substantial" interests, and (4) "a judicial determination of which will be final and conclusive." *Id.* at 336 (citing *To-Ro Trade Shows v. Collins*, 27 P.3d 1149, 1153 (Wash. 2001)).

Prisco's fourth cause of action claims "Defendant NAMA has asserted rights to the [NAMA] credentials and claimed that Plaintiff cannot use the credentials he earned. NAMA has discriminately refused to continue to certify the services of a person who maintains the standards or conditions that the NAMA marks purport to certify." Dkt. No. 1-1 ¶ 53. Plaintiff seeks a declaratory judgment that "Plaintiff may use the [NAMA] credentials he earned" or, in the alternative, NAMA's trademarks "should be declared invalid as a matter of law." *Id.* ¶¶ 53–54 (citing 15 U.S.C. § 1064). Defendants do not dispute this claim raises a judiciable controversy,

instead arguing that each alleged theory is vague and lacks sufficient facts. Dkt. No. 20 at 7–8.[7] The Court finds Defendants' arguments unpersuasive.

First, Defendants argue that Prisco's claim to invalidate NAMA's trademarks fails because there is no registered trademark and "Certified Crisis Intervention Specialist" and "CCIS" are common law trademarks. Dkt. No. 20 at 8. Defendants do not cite any evidence to support this factual allegation. At this early stage of the case, and considering the liberal pleading standards under Rule 8, Prisco's claim for declaratory relief relating to NAMA's trademarks is sufficiently pleaded.

Second, Defendants argue Prisco's claim for a declaration that he may use the CCIS credential fails because Prisco fails to allege that "he still meets the credentialing requirements" for the NAMA credential. Dkt. No. 20 at 7–8. But Defendants ignore the allegations in the complaint where Prisco identifies the public-facing requirements for the CCIS V NAMA credential (Dkt. No. 1-1 ¶ 21) and then generally describes his own "preeminent experience, training, and contributions" and extensive experience with "crisis de-escalation training and consulting services" (*id.* ¶ 22). Even more, Prisco alleges that NAMA has failed to continue to certify the services "*of a person who maintains the standards or conditions* that the NAMA marks purport to certify." *Id.* at ¶ 53 (emphasis added). Prisco thus sufficiently alleges he meets the NAMA credentialing requirements and states a claim for declaratory judgment.

Defendants' motion to dismiss the declaratory judgment claim is denied.

5. <u>Prisco sufficiently alleges a claim for unjust enrichment against Moss, Growth Central Training, and Pfeiffer.</u>

In Washington, the elements of an unjust enrichment claim are:

---

[7] Defendants initially argued the declaratory judgment claim should be dismissed because Prisco failed to cite a "contract, statute, or other legal basis for the desired declaration." Dkt. No. 11 at 17. In response, Prisco points out the complaint's clear citation to 15 U.S.C. § 1064 (Dkt. No. 1-1 ¶ 53). Dkt. No. 18 at 9.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 16

> (1) there must be a benefit conferred on one party by another; (2) the party receiving the benefit must have an appreciation or knowledge of the benefit; and (3) the receiving party must accept or retain the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value.

*G.G. v. Valve Corp.*, No. C16-1941-JLR, 2020 WL 7385710, at *8 (W.D. Wash. Dec. 16, 2020) (citing *Pierce Cnty. v. State*, 185 P.3d 594, 619 (Wash. Ct. App. 2008)). Defendants argue Prisco's unjust enrichment claim fails on the first and third elements because Prisco does not specify the benefit conferred on Defendants or explain why a remedy is necessary. Dkt. No. 11 at 18. The Court disagrees.

First, the complaint describes in detail how Prisco assisted in the development of the proposal to HCA and that he "received nothing for his contributions" (Dkt. No. 1-1 ¶ 38). Dkt. No. 18 at 10. In reply, Defendants do not explain why these allegations fail to meet Prisco's burden of showing a benefit conferred, and the Court finds them sufficient to show such a benefit. Dkt. No. 20 at 8–9.

Second, Defendants argue that "[t]he complaint does not allege *why* a remedy is necessary." Dkt. 11 at 18. The Court construes this argument to mean that Prisco has failed to plead the third element, that it is inequitable for Defendants to retain the benefits of Prisco's work. But again, Prisco has alleged that Defendants Moss, Pfeiffer, and Growth Central Training "were aware Plaintiff contributed to the Partnership's success in being awarded [the contract] through his participation in the submission of the initial proposal to the HCA and his role in developing the curriculum" and that Plaintiff was never paid. Dkt. 1-1 ¶ 38. Prisco further alleges that Defendants acted in concert to prevent him from competing with the Crisis Intervention Certification Project, and revoked his NAMA credentials without justification and with the intent to interfere with Plaintiff's business with the HCA. *Id.* ¶¶ 23–25. As such, the complaint sufficiently avers that "it [is] inequitable for the receiving party to retain the benefit without paying

its value" and sufficiently alleges the third element of an unjust enrichment claim. *G.G.*, 2020 WL 7385710 at *8.

In sum, Defendants' motion to dismiss is granted in part. Counts one and two are dismissed with leave to amend. The remainder of Defendants' motion to dismiss is denied.

E.     **Defendants' Motion to Transfer Venue Is Denied.**

Defendants ask the Court, if not dismissing the case under Rules 12(b)(2), 12(b)(6), or 12(b)(7), to transfer this case to the Southern District of New York under 28 U.S.C. § 1404(a). Dkt. No. 11 at 24. The parties agree (Dkt. No. 11 at 24, Dkt. No. 18 at 20–21) that the Court may consider the following factors in deciding whether transfer is warranted:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498–99 (9th Cir. 2000). It is Defendants' burden to show transfer is warranted. *Attachmate Corp. v. Pub. Health Tr. of Miami-Dade Cnty. Fla.*, 686 F. Supp. 2d 1140, 1149 (W.D. Wash. 2010). Here Defendants' sole argument for transfer is that "this lawsuit is generally about Plaintiff's business relationship with [Growth Central Training]"[8] and Growth Central Training is a New York entity. Dkt. No. 11 at 24. Defendants do not analyze any of the relevant factors. *See Boddy*, 2018 WL 4637380, at *7–8 (denying motion transfer when "Defendants provide a one-paragraph conclusory and contradictory argument that transfer is appropriate"). Accordingly, Defendants have not met their burden to show transfer is warranted here.

---

[8] In contrast, Defendants state in their motion arguing no personal jurisdiction that "[a]s best as Defendants can tell, Prisco's claims arise primarily out of the agreement between HCA and GCT." Dkt. No. 11 at 20.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 18

### III.  CONCLUSION

Defendants' motion is granted in part and denied in part.  Dkt. No. 11.

Defendants' motion to dismiss for lack of personal jurisdiction is DENIED.

Defendants motion to dismiss for failure to join a party is DENIED.

Defendants' motion to dismiss for failure to state a claim is GRANTED as to the partnership claims (count one and two), and DENIED as to count three, four, and five.  Count one and two are dismissed with leave to amend.

Defendants' motion to transfer venue is DENIED.

Prisco can amend his complaint by September 16, 2024.

Dated this 16th day of August, 2024.

_____
Kymberly K. Evanson
United States District Judge